IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ALPHA CREATIONS, INC.** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | CIVIL ACTION NO. 4:16-cv-02390 |
| | § | |
| **DANIEL K FINE JEWELRY** | § | |
| USA, LLC. | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendant.* | § | |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Alpha Creations, Inc., ("Alpha Creations") for its complaint against Defendant, Daniel K Fine Jewelry USA, LLC ("Daniel K"), avers that:

### SECTION I. PARTIES

1.      Plaintiff, Alpha Creations is a corporation organized and existing under the laws of the State of Texas, with its principal place of business at One Arena Place, 7322 Southwest Freeway, Suite 1810., Houston, Harris County, TX 77074.

2.      On information and belief, Defendant, Daniel K is a corporation organized under the laws of the State of New York, and may be served at its principal place of business at 589 5th Avenue, New York, New York 10017.

### SECTION II.  JURISDICTION

3.      The Court has subject matter jurisdiction over the lawsuit pursuant to the provisions of  28 U.S.C. §§ 1331, 1338, 2201, 2202, and under 15 U.S.C. § 15 because the action concerns potential acts of patent infringement, patent validity, and unfair competition.

4.      The federal courts have exclusive subject matter jurisdiction over all cases arising under the patent laws. 28 U.S.C. § 1338(a).  An action for patent infringement or one for a declaratory judgment that a patent is invalid, unenforceable, or not infringed arises under the patent laws.  *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874 (Fed. Cir. 1983).

5.      Alpha Creations brings this claim for a declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, § 2202 seeking a declaratory judgment of non-infringement and invalidity of United States Patent Nos. 7,269,973 and United States Patent D513,712 (collectively, "the patents in suit"), both purportedly owned by Daniel K.

6.      Declaratory relief is necessary because Plaintiff has a reasonable apprehension of being sued for patent infringement by Defendant.  Plaintiff's apprehension is reasonable and realistic in view of Defendant's threats as to Plaintiff's acts in the United States.  Such apprehension has a chilling effect on competition in this country and is likely to cause harm by interfering with Plaintiff's business opportunities.

7.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(b) because it is in this district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated.

**SECTION III.  FACTS**

8.      Alpha Creations has manufactured and sold to customers in the United States a 3/4 U-prong eternity ring in 18K white gold, 18K yellow gold, 18K rose gold and platinum, and a 1/2 U-prong eternity ring in 18K white gold, 18K yellow gold, 18K rose gold and platinum (collectively "the accused rings"), from 2009 until recently, on its online diamond and jewelry Internet retailing website www.briangavindiamonds.com.

9.      On or about July 26, 2016, Alpha Creations received a cease and desist letter from the law firm of Ezra Sutton, P.A., on behalf of Daniel K, a true and correct copy of which is attached hereto as Exhibit 1. Copies of the patents in suit are attached to the letter (Exhibits 1-A and 1-B), and screenshots of the accused rings apparently taken from the Alpha Creations website, www.briangavindiamonds.com, were also attached (Exhibit 1-C).

10.      In this letter, Daniel K demanded that Alpha Creations (1) cease all sales of its "infringing U Eternity Wedding bands and settings," (2) provide an accounting of all sales made by Alpha Creations of "infringing products sold," (3) immediately turn over all molds, silicone molds, models, waxes and CAD files, (4) immediately turn over all open orders and (5) agree to identify retailers or other customers using Alpha Creations' website to obtain casting or custom orders; threatened that if Alpha Creations did not comply, "we have been authorized to commence a lawsuit for infringement and unfair competition in federal court for an accounting of profits, damages, an injunction, and attorneys fees"; and noted unless an immediate reply by email was sent, "we will begin to prepare and file in the Federal Court the Summons and Complaint as authorized by Daniel K Fine Jewelry USA." See Exhibit 1.

11.      On information and belief, Daniel K asserted the same patents against four other parties and on May 27, 2016 filed complaints in the Southern District of New York for patent infringement against: Forevermark US Inc. (Case No. 1:16-cv-04004-AJN), Exhibit "2" attached hereto; Blue Nile Inc. (Case No. 1:16-cv-04001-LGS), Exhibit "3" attached hereto; JR Castings & Findings Inc. (Case No. 1:16-cv-04002-PGG), Exhibit "4" attached hereto; and Unique Settings of New York Inc. (Case No. 1:16-cv-04004-JPO), Exhibit "5" attached hereto; asserting both the '712 and '973 patents.

12.      On information and belief, Daniel K has sent similar cease and desist letters to other jewelers in the United States who have ceased selling eternity band rings with U-shaped seats.

13.      A justiciable case or controversy therefore exits between Alpha Creations and Daniel K concerning, inter alia, Alpha Creations' alleged infringement of the '712 and '973 patents, imminent fear of suit and the validity of the '712 and '973 patents.

14.      On February 20, 2004, Daniel Koren, the applicant on both of the patents in suit, executed and filed a trademark application on behalf of Daniel K, Inc. for the trademark UTERNITY, United States Serial No. 78/371,065 ("the UTERNITY application"), submitting the following full page advertisement from the February 2004 issue of *Couture International Jeweler* and/or point of sale display, as a specimen then in use:

**February 2004 *Couture International Jeweler* Ad/Point of Sale Display**



A true and correct copy of the '065 UTERNITY registration file history is attached hereto as Exhibit 6, and includes a copy of the UTERNITY trademark application, with the specimens of use (hereinafter "February 2004 *Couture International Jeweler* Ad") at pp. 29-30 and 33-36.

4

15.     On information and belief, Daniel Koren made and/or made arrangements to make the UTERNITY ring shown in the February 2004 *Couture International Jeweler* Ad; took and/or made arrangements to take photographs of the UTERNITY ring shown in the February 2004 *Couture International Jeweler* Ad; and personally arranged for the placement of the February 2004 *Couture International Jeweler* Ad, all prior to February 20, 2004.

16.     In the UTERNITY trademark application signed and filed on February 20, 2004, Daniel Koren, after being warned that willful false statements and the like so made are punishable by fine or imprisonment or both under 18 U.S.C. 1001, alleged dates of use for the UTERNITY mark anywhere at least as early as October 1, 2003, and use in interstate commerce at least as early as December 2, 2003. Daniel Koren also stated the specimens submitted showed the mark as then used in commerce and consisted of advertising and point of purchase displays.  See Exhibit 6, pp. 26-27.

17.     On or about March 2, 2005, the United States Patent and Trademark Office sent a Notice of Publication under 12(a); published the UTERNITY mark for opposition in the Official Gazette on or about March 22, 2005; and issued Reg. No. 2,962,475 on June 14, 2005, which again recited the 2003 dates of use and the February 20, 2004 filing date. See Exhibit 6, pp. 20-21.

18.     Contemporaneously with the publication and registration of the UTERNITY trademark based on the February 2004 *Couture International Jeweler* Ad as a specimen, and more than one year after filing the UTERNITY trademark application, on April 29, 2005, Daniel Koren filed U.S. Patent Application Ser. No. 11/118,819, entitled "Eternity Band with U-Shaped Seats for Gemstones," which eventually issued as the '973 patent; and then on May 4, 2005, U.S. Patent Application Ser. No. 29/229,174, also entitled "Eternity Band with U-Shaped Seats for Gemstones," which eventually issued as the '712 patent. True and correct copies of the file histories of the applications issued as the '973 and '712 patents, downloaded from the United States Patent and Trademark Office are attached hereto as Exhibits 7 and 8, respectively.

19.     The ring published in the 2004 *Couture International Jeweler* February Ad was virtually identical to the rings illustrated and claimed in the '973 and '712 patents, and but for the examiners' inability to consider the 2004 *Couture International Jeweler* February Ad the '973 and '712 patents would never have been granted.

20.    In the '973 patent application, Daniel Koren signed a Declaration for Utility or Design Patent Application acknowledging the duty to disclose information which is material to patentability as defined in 37 CFR 1.56; and declaring that all statements made of his own knowledge are true and all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment or both under 18 U.S.C. 1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon. See Exhibit 7 at pp. 63-64.

21.    Daniel Koren and/or Ezra Sutton withheld the February 2004 *Couture International Jeweler* Ad from disclosure to the patent examiner, and never cited it in the '973 patent application. See Exhibit 1-B and Exhibit 7.

22.    In the '712 patent application, Daniel Koren also signed a Declaration for Utility or Design Patent Application acknowledging the duty to disclose information which is material to patentability as defined in 37 CFR 1.56; and declaring that all statements made of his own knowledge are true and all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment or both under 18 U.S.C. 1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon. See Exhibit 8 at pp. 27-28.

23.    In the '712 patent application, on May 12, 2005, Daniel Koren's attorney, Ezra Sutton, filed a Petition to Make Special so that the application would be advanced out of order for earlier examination. The Petition to Make Special represented that a pre-examination search was made of the records of the U.S. Patent Office by Ezra Sutton, and cited only three U.S. Patents, concluding that the features set forth in the Claim "patentably distinguish over the prior art," and making no mention or other disclosure of the February 2004 *Couture International Jeweler* Ad. See Exhibit 8 at pp. 14-17.

24.    Daniel Koren withheld the February 2004 *Couture International Jeweler* Ad from disclosure to the patent examiner, and never cited it in the '712 patent application. See Exhibit 1-A and Exhibit 8.

25.     On information and belief, Daniel Koren and/or Ezra Sutton were well aware of the February 2004 *Couture International Jeweler* Ad, were well aware of the duty of disclosure, and deliberately withheld the February 2004 *Couture International Jeweler* Ad from the examiners in both of the '973 and '712 patent applications.

26.     On information and belief, Daniel Koren executed a power of attorney appointing Ezra Sutton and Ezra Sutton, P.A. to prosecute the UTERNITY registration and file a Declaration Under Sections 8 and 15, which was filed in the United States Patent and Trademark Office on or about June 9, 2011. A copy of the submission by Ezra Sutton appears at pp. 13-19 of Exhibit 6.

27.     On or about June 15, 2015, Ezra Sutton, P.A., filed an Application for Renewal of the UTERNITY registration. See Exhibit 6 at pp. 6-11.

28.     On information and belief, Daniel K and/or Ezra Sutton, the author of Daniel K's cease and desist letter of Exhibit 1, were aware that the February 2004 *Couture International Jeweler* Ad had been withheld from the examiners in both of the '973 and '712 patent applications, and that the '973 and '712 patents were invalid and unenforceable as a result.

29.     Daniel K has  alleged, inferentially, that it is the owner of the entire rights, title and interest in and to the patents in suit and that it has right to assert these patents against Alpha Creations.  There are no assignments recorded in the USPTO for the patents in suit.

30.     On information and belief, as recently as September 1, 2015, Daniel Koren and Daniel K have been advertising that the UTERNITY mounting is patented, with knowledge that the patents are invalid and/or unenforceable. See Exhibit 9 (http://www.dayandnightmagazine.com/dani-by-daniel-k-celebrates-a-milestone-year#sthash.wGBn76yA.dpbs).

31.     Daniel K continues to advertise on its website that the UTERNITY rings are protected by the '973 and '712 patents. See Exhibit 10 (http://danielk.net/about.php?item=5).

32.     On information and belief, Daniel K is asserting the '973 and '712 patents in an attempt to monopolize the U.S. market for eternity bands with U-shaped mounting seats and/or lessen competition within this market.

33.     On information and belief, Daniel K is an international company and has a dangerous probability of succeeding in its lessening of competition and/or monopolization in the U.S. market for eternity bands with U-shaped mounting seats.

34.     The '973 patent includes six claims, each of which claims are directed to an eternity band having a multi-stone circular setting in combination with gemstones or diamonds. The claims at issue here are at least  claims 1-6 which are directed to the aforesaid eternity band having a multi-stone circular setting in combination with gemstones or diamonds.

35.     Each of the claims of the '973 patent is limited to "a plurality of U-shaped seats being connected in series to form a circular configuration," and "two upstanding prongs which are shared with the adjacent U-shaped seats for seating adjacent gemstones so the side wall surfaces of adjacent gemstones touch each other to provide the appearance of a single continuous gemstone surface extending all the way around the eternity band." See Exhibit 1 - B at p. 19 (column 6/lines 7-13).

36.     The accused eternity rings sold by ALPHA CREATIONS do not include, *inter alia*, a plurality of U-shaped seats being connected in series to form a circular configuration of touching gemstones extending all the way around the eternity band.

37.     The only claim of the '712 patent includes the ornamental design for an eternity band with U-shaped seats for gemstones as shown and described, and a circular configuration corresponding to that of the '973 patent is shown.

**COUNT I: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,269,973**

38.     Alpha Creations herein incorporates the allegations of paragraphs 1-37 as if fully set forth at length.

39.     An immediate, real, and justiciable case or controversy exists between the parties concerning the validity of the claims of the '973 patent.

40.     Claims 1-6 of the '973 patent are invalid for at least the following reasons:

A.     More than one year prior to the date of the application which matured into  the '973 patent, the subject matter thereof was described in a printed publication in the United States or a foreign country, and thus claims 1-6 of  the '973 patent are invalid under Title 35 of the United States Code § 102(b) (pre-AIA); and

8

B.      More than one year prior to the date of the application which matured into the '973 patent, the subject matter thereof was in public use in the United States, and thus claims 1-6 of the '973 patent are invalid under Title 35 of the United States Code § 102(b) (pre-AIA); and

C.      More than one year prior to the date of the application which matured into the '973 patent, the subject matter thereof was on sale in the United States, and thus claims 1-6 of the '973 patent are invalid under Title 35 of the United States Code § 102(b) (pre-AIA); and

D.      The differences between the subject matter set forth in claims 1-6 of the '973 patent and the prior art are such that the subject matter as a whole would have been obvious, at the time of the purported invention thereof by Daniel Koren, to a person having ordinary skill in that art.  Thus, claims 1-6 of the '973 patent are invalid under 35 U.S.C. § 103.

41.      Alpha Creations seeks a judgment that Claims 1-6 of the '973 patent are invalid.

**COUNT II: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. D513,712**

42.      ALPHA CREATIONS herein incorporates the allegations of paragraphs 1-41 as if fully set forth at length.

43.      An immediate, real, and justiciable case or controversy exists between the parties concerning the validity of the '712 patent.

44.      The claim of the '712 patent is invalid for at least the following reasons:

A.      More than one year prior to the date of the application which matured into the '712 patent, the subject matter thereof was described in a printed publication in the United States or a foreign country, and thus the claim of the '712 patent is invalid under Title 35 of the United States Code § 102(b) (pre-AIA); and

B.      More than one year prior to the date of the application which matured into the '712 patent, the subject matter thereof was in public use in the United States, and thus the claim of the '712 patent is invalid under Title 35 of the United States Code § 102(b) (pre-AIA); and

C.      More than one year prior to the date of the application which matured into the '712 patent, the subject matter thereof was on sale in the United States, and thus the claim of the '712 patent is invalid under Title 35 of the United States Code § 102(b) (pre-AIA); and

D.      The differences between the subject matter set forth in the claim of the '712 patent and the prior art are such that the subject matter as a whole would have been obvious, at the time of the purported invention thereof by Daniel Koren, to a person having ordinary skill in that art.  Thus, thus the claim of the '712 patent is invalid under Title 35 of the United States Code § 103 (pre-AIA).

45.      Alpha Creations seeks a judgment that the claim of the '712 patent is invalid.

## COUNT III: DECLARATORY JUDGMENT OF UNENFORCEABILITY FOR INEQUITABLE CONDUCT OF THE '973 PATENT

46.      ALPHA CREATIONS herein incorporates the allegations of paragraphs 1-45 as if fully set forth at length.

47.      Specifically, Alpha Creations incorporates by reference the allegations set forth in paragraphs 14-21 and 25 above.

48.      An immediate, real, and justiciable case or controversy exists between the parties concerning the enforceability of the '973 patent.

49.      Alpha Creations seeks a judgment that the '973 patent is unenforceable under the doctrine of inequitable conduct.

## COUNT IV: DECLARATORY JUDGMENT OF UNENFORCEABILITY FOR INEQUITABLE CONDUCT OF THE '712 PATENT

50.      ALPHA CREATIONS herein incorporates the allegations of paragraphs 1-49 as if fully set forth at length.

51.      Specifically, Alpha Creations incorporates by reference the allegations set forth in paragraphs 14-19 and 22-25 above.

52.      An immediate, real, and justiciable case or controversy exists between the parties concerning the enforceability of the '712 patent.

53.     Alpha Creations seeks a judgment that the '712 patent is unenforceable under the doctrine of inequitable conduct.

**COUNT V: DECLARATORY JUDGMENT OF UNENFORCEABILITY FOR LACHES OF THE '973 PATENT**

54.     ALPHA CREATIONS herein incorporates the allegations of paragraphs 1-53 as if fully set forth at length.

55.     An immediate, real, and justiciable case or controversy exists between the parties concerning the enforceability of the '973 patent.

56.     Alpha Creations seeks a judgment that the '973 patent is unenforceable under the doctrine of laches.

**COUNT VI: DECLARATORY JUDGMENT OF UNENFORCEABILITY FOR LACHES OF THE '712 PATENT**

57.     ALPHA CREATIONS herein incorporates the allegations of paragraphs 1-56 as if fully set forth at length.

58.     An immediate, real, and justiciable case or controversy exists between the parties concerning the enforceability of the '712 patent.

59.     Alpha Creations seeks a judgment that the '712 patent is unenforceable under the doctrine of laches.

**COUNT VII: DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '973 PATENT**

60.     ALPHA CREATIONS herein incorporates the allegations of paragraphs 1-59 as if fully set forth at length.

61.     Alpha Creations has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '973 patent.

62.     An immediate, real, and justiciable case or controversy exists between the parties concerning Alpha Creations' alleged infringement of the '973 patent.

63.     Alpha Creations seeks a judgment that it does not infringe the '973 patent.

**COUNT VIII: DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '712 PATENT**

64.     ALPHA CREATIONS herein incorporates the allegations of paragraphs 1-63 as if fully set forth at length.

65.     Alpha Creations has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '712 patent.

66.     An immediate, real, and justiciable case or controversy exists between the parties concerning Alpha Creations' alleged infringement of the '712 patent.

67.     Alpha Creations seeks a judgment that it does not infringe the '712 patent.

**COUNT IX: WALKER PROCESS FRAUD, ATTEMPTED MONOPOLIZATION UNDER 15 U.S.C. § 2**

68.     ALPHA CREATIONS herein incorporates the allegations of paragraphs 1-67 as if fully set forth at length.

69.     During prosecution of the patents in suit, the inventor Daniel Koren and prosecuting attorney Ezra Sutton failed to cite material prior art information and publication showing, among other things, the printed public disclosure, sale and public use of the claimed subject matter by Daniel Koren more than one year prior to the filing date of the patents in suit; and misrepresented the prior art in a deceptive manner.

70.     The inventor Daniel Koren and, on information and belief, the prosecuting attorney Ezra Sutton, withheld this prior printed public disclosure, sale, and public use information from the Patent and Trademark Office examiners with deceptive intent.

71.     On information and belief, if the inventor Daniel Koren and the prosecuting attorney Ezra Sutton had not withheld critical prior art information and had not misrepresented the prior art in a deceptive manner, the Patent and Trademark Office would not have issued either of the patents in suit.

72.     As a result, the inventor Daniel Koren obtained the patents in suit by knowingly and willfully misrepresenting facts to the Patent and Trademark Office.

73.     Daniel Koren's fraud on the United States Patent and Trademark Office is in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Through this fraud, Daniel K engaged in predatory or uncompetitive conduct with a specific intent to monopolize. With respect to the allegations in this claim, the relevant geographic market is the United States.

74.     There is a dangerous probability that Daniel K will achieve monopoly power in the U-shaped seat eternity mounting ring market.

75.     As a result of Daniel K's unlawful acts, Alpha Creations has suffered and will continue to suffer antitrust injury in an amount to be proven at trial. First, Daniel K has caused Alpha Creations to stop selling the accused eternity rings while investigating Daniel K's infringement allegations. Second, Daniel K has forced Alpha Creations to expend substantial money, time and human resources in order to defend against the allegations.

**COUNT X: SHAM LITIGATION, ATTEMPTED MONOPOLIZATION UNDER 15 U.S.C. § 2**

76.     ALPHA CREATIONS herein incorporates the allegations of paragraphs 1-75 as if fully set forth at length.

77.     On information and belief, when Daniel K threatened Alpha Creations with infringement of the patents in suit, it knew that the patents in suit were invalid and unenforceable.

78.     On information and belief, Daniel K's threatened infringement action was objectively baseless because no reasonable litigant could conclude that Daniel K's infringement allegations were reasonably calculated to elicit a favorable outcome based upon Daniel Koren's, Ezra Sutton's, and Daniel K's inequitable and fraudulent conduct in obtaining the patents in suit, as described herein.

79.     On information and belief, Daniel K did not have probable cause to assert the claims in the cease and desist letter (Exhibit 1), because the patents in suit were invalid and unenforceable.

80.     Through this sham litigation, Daniel K engaged in predatory or uncompetitive conduct with a specific intent to monopolize.

81.     There is a dangerous probability that Daniel K will achieve monopoly power in the U-shaped seat eternity mounting ring market.

82.     As a result of Daniel K's unlawful acts, Alpha Creations has suffered and will continue to suffer antitrust injury in an amount to be proven at trial. First, Daniel K has caused Alpha Creations to stop selling the accused eternity rings while investigating Daniel K's infringement allegations. Second, Daniel K has forced Alpha Creations to expend substantial money, time and human resources in order to defend against the allegations.

## PRAYER FOR RELIEF

WHEREFORE, ALPHA CREATIONS prays for judgment and relief as follows:

83.     Declaring that the '712 and '973 patents are invalid;

84.     Declaring that the '712 and '973 patents are unenforceable;

85.     Declaring that Alpha Creations does not infringe the '712 and '973 patents;

86.     Finding that this is an exceptional case under 3 U.S.C. § 285;

87.     Finding that Daniel K violated Section 2 of the Sherman Act, 15 U.S.C. § 2 and awarding treble damages;

88.     Permanently enjoining Daniel K from monopolizing or attempting to monopolize the relevant product and geographic markets, as provided by 15 U.S.C. § 26;

89.     Awarding Alpha Creations its costs and attorneys' fees; and

90.     Such further and additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

91.     Alpha Creations demands a jury trial on all matters so triable.

Dated:  August 8, 2016                               Respectfully submitted,


**Lundeen & Lundeen PLLC**

*/s/ Marcee G. Lundeen*
_____
Marcee G. Lundeen
State Bar No. 12695500
Fed. ID. 34855
marcee@lpats.com
Daniel N. Lundeen
State Bar No. 12695250
Fed. ID. 6524
dan@lpats.com
2710 Louisiana St.

Houston, Texas 77006
Tel: 713.652.2555
Fax: 713.652.2556

**ATTORNEYS FOR PLAINTIFF, Alpha Creations,
Inc.**